In the Supreme Court of Georgia

Decided:    May 23, 2016

S15G1610. OLDS v. THE STATE.

BLACKWELL, Justice.

Vashon Olds was tried by a Dougherty County jury and convicted of the false imprisonment[1] and battery[2] of a woman with whom he previously had a romantic relationship. At trial, the jury heard evidence of these crimes, as well as evidence of two incidents in which Olds had assaulted other women. The prosecution offered the evidence of these other incidents to show criminal intent, among other things, and the trial court admitted it under OCGA § 24-4-404 (b) ("Rule 404 (b)"), which provides in pertinent part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive,

---

[1] See OCGA § 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

[2] See OCGA § 16-5-23.1 (a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.").

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Contending that the trial court abused its discretion when it admitted the evidence of the other incidents, Olds appealed. The Court of Appeals, however, rejected that contention and affirmed. See Olds v. State, 332 Ga. App. 612 (774 SE2d 186) (2015). In doing so, the Court of Appeals relied extensively on Bradshaw v. State, 296 Ga. 650 (769 SE2d 892) (2015), a case in which this Court considered the admissibility of evidence offered under Rule 404 (b) to prove intent. We issued a writ of certiorari in this case to review the decision of the Court of Appeals, and we now conclude that a clarification of Bradshaw is in order. Accordingly, we vacate the decision of the Court of Appeals, and we remand for the Court of Appeals to reconsider in light of that clarification.

1. In its opinion below, the Court of Appeals set forth the facts of this case as follows:

> Viewed in the light most favorable to Olds's convictions, the evidence shows that Olds was a close family friend of the victim, and they were briefly involved in a romantic relationship. In February 2009, the victim moved to Albany to attend college, and she contacted Olds about possibly living in his trailer. The victim and Olds agreed that the victim and her son would move in with Olds, and the victim would pay for half of the utilities. The victim and her son each had their own room[,] and they had their own

2

bathroom that they shared. The victim told Olds that they would not be resuming their prior romantic relationship, and Olds confirmed that he understood.

Shortly after the victim moved in, she and her [new] boyfriend were sitting in a car outside of her grandmother's house when Olds pulled up behind their vehicle, got out of his car, and told the victim's boyfriend that she was "his lady." Olds subsequently apologized for his behavior, and the victim returned to the trailer.

The next day, the victim told Olds that she was going out of town. She got into her car, intending to leave, but then realized that she had forgotten her son's jacket in the trailer. The victim went inside the trailer and, as she walked into her bedroom, Olds followed her. When the victim asked Olds what he was doing, he responded that he was getting ready to take out the trash. The victim then walked down the hallway, and Olds jumped her from behind, while holding a white tie in his hand. The victim put her arms up to keep the tie away from her neck and avoid being choked.

The victim begged Olds to let her go, but he told her[,] "you're not going anywhere," and he pushed her onto a chair in his bedroom. Olds then tied up the victim, picked her up and threw her on the bed. When the victim again begged him to stop, Olds got on top of her and told her that[,] if she cooperated and shut up, "it'll be over with." Olds began to unbutton and unzip the victim's pants. The victim screamed and Olds put his hands over the victim's nose and mouth so that she could not breathe.

Olds then duct taped the victim's mouth. When she removed the tape, he told her that[,] if she screamed, he was going to kill her. Olds also told the victim that he was going to kill himself because he was "not going back to prison." When the victim continued to plead with Olds, he turned her over and sat her up on the edge of the

3

bed. The victim continued to talk to Olds to calm him down, because she was afraid that he would kill her.

After about 30 minutes, Olds untied one of the victim's ties, and picked up a long blade from a tray beside his bed. The victim was afraid Olds was going to cut her so she told him to stop and asked him for some water. At that point, the victim received a phone call from her grandmother; Olds had a brief conversation with the victim's grandmother; and after the phone call, the victim begged Olds to let her go. Olds picked up the blade and began to cut the ties off the victim's arms and stomach.

Once free, the victim continued to talk to Olds, telling him that she forgave him, and they could "work it out." Eventually, the victim asked Olds to walk her to the car, which he did, after she told him that she would return. The victim drove down the street, flagged down a police officer about a minute later[,] and told the officer what had happened.

332 Ga. App. at 612-613.

The Court of Appeals also detailed the evidence concerning the other women that was admitted under Rule 404 (b). The first incident involved an assault upon a woman who had been — like the victim in this case — involved romantically with Olds:

T. H. testified that, in June 1999, Olds called her, told her she had forgotten something at his house[,] and said he would come over to return the item. When Olds arrived, T. H. was in the kitchen cooking. Olds came up behind T. H. with a knife, told T. H. that he was not leaving, said if he could not have her, then nobody else would, and then cut T. H.'s chin. T. H. yelled for her kids to run out

4

of the house and struggled with Olds before running to a neighbor's house.

332 Ga. App. at 613-614. The second incident involved a sexual assault upon a woman with whom Olds was acquainted more casually:

> [K. B.] testified that, in August 2012, Olds drove her to Walmart to buy a part for her mother's car, which he was repairing. After buying the part, Olds and K. B. headed back to her house when Olds suddenly took a detour, saying that he needed to go home to grab a missing part. When they arrived at Olds's home, he told K. B. that she could not stay in his car, so she followed him up to his room. After looking around, Olds told K. B. that he could not find the missing part, so K. B. turned toward the door to leave. Olds grabbed K. B. from behind and threw her onto the bed. Olds then forcibly held K. B. down, pulled down her shorts and underwear[,] and placed his tongue on her vagina.
>
> K. B. told Olds to stop and tried to push him away, but he refused to stop, and he then tried to insert his penis into her vagina. When K. B. grabbed Olds's penis and scratched his leg and back, Olds got off of her. After Olds drove K. B. home, she told her mother what had happened, and her mother immediately called the police.

Id. at 614.

The trial court admitted the evidence concerning the other women for several purposes, including to prove criminal intent.[3] On appeal, Olds asserted

---

[3] The trial court also admitted this evidence to show identity, motive, and opportunity and to disprove mistake or accident. The Court of Appeals concluded that the evidence was admissible to show intent and, therefore, did not consider whether the evidence was properly

5

that the evidence was not properly admitted for any of these purposes. As for intent, Olds argued that his intent was never really at issue, noting that his defense at trial principally was that the incident described by the victim in this case never happened. See 332 Ga. App. at 615. Relying extensively on our decision in <u>Bradshaw</u>, the Court of Appeals held that Olds put intent at issue simply by pleading not guilty, see id., and the evidence of the other incidents was relevant because the other incidents involved the same sort of criminal intent as the crimes with which Olds was charged in this case, namely, an "intent to harm women he knew by attacking them from behind." Id. at 616. The Court of Appeals found that "the probative value of evidence of the extrinsic acts was not substantially outweighed by its prejudicial effect," and it found as well that the evidence adequately tied Olds to those prior incidents.[4] Id. The Court of Appeals concluded, therefore, that the evidence was properly admitted to show criminal intent. Id.

---

admitted for any of these other purposes.

[4] T. H. and K. B. testified at trial, and each woman identified Olds as the man who had assaulted her.

2. Five years ago, our General Assembly enacted a new Evidence Code,[5] of which Rule 404 (b) is a part. Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. See State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015). Rule 404 (b) is one such provision, see State v. Jones, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015), and so, when we have considered the meaning of Rule 404 (b), we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b). See, e.g., Brooks v. State, ___ Ga. ___, ___ (2) (Case No. S15A1480, decided Mar. 7, 2016); Brannon v. State, 298 Ga. 601, 606-608 (4) (783 SE2d 642) (2016); Jones, 297 Ga. at 158-160 (1), (2), 163-164 (3); Bradshaw, 296 Ga. at 656-658 (3).

Borrowing from the decisional law of the federal appellate courts, we have identified three general requirements for the admission of evidence of other acts

[5] The new Evidence Code applies in cases tried on or after January 1, 2013. See Humphrey v. Williams, 295 Ga. 536, 539 (1) (b), n. 2 (761 SE2d 297) (2014). Olds was tried in June 2013, and so, the new Evidence Code applies in this case.

7

under Rule 404 (b). First, such evidence must be relevant to some issue other than character. See Jones, 297 Ga. at 158-159 (1). This requirement is drawn, of course, directly from the text of Rule 404 (b) itself, which provides that evidence of other acts "[is not] admissible to prove the character of a person in order to show action in conformity therewith," but it may be admissible "for other purposes." OCGA § 24-4-404 (b). Rule 404 (b) identifies a number of "other purposes" for which evidence of other acts permissibly may be admitted,[6] and to determine whether such evidence actually is "relevant" for a particular purpose, we look to OCGA § 24-4-401 ("Rule 401"), which "deems evidence relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Jones, 297 Ga. at 159 (2). Second, for evidence of other acts to be admitted under Rule 404 (b), the evidence must pass

---

[6] The enumeration in Rule 404 (b) of permissible purposes for which evidence of other acts may be admitted is not exhaustive. See Jones, 297 Ga. at 159-160 (2). Notably, however, Rule 404 (b) does not identify "bent of mind" or "course of conduct" as permissible purposes for evidence of other acts, and their absence is especially conspicuous, inasmuch as evidence of other acts routinely was admitted under our old Evidence Code for those purposes. See Reeves v. State, 294 Ga. 673, 675 (2), n. 3 (755 SE2d 695) (2014). As such, we have held that Rule 404 (b) does not authorize the admission of evidence of other acts to show "bent of mind" or "course of conduct." See Brooks, ___ Ga. at ___ (2).

8

the test of OCGA § 24-4-403 ("Rule 403"), which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Jones, 297 Ga. at 163-164 (3). The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 "is an extraordinary remedy which should be used only sparingly."[7] Id. at 164 (3) (citation and punctuation omitted). Finally, evidence of other acts is admissible under Rule 404 (b) only to the extent that the evidence is sufficient to permit a jury to conclude by a preponderance of the proof that the person with whom the evidence is concerned actually committed the other acts in question. See id. at 158-159 (1).[8] We identified these requirements as early as Bradshaw,

_____

[7] "The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Hood v. State, ___ Ga. ___, ___ (4) (Case No. S16A0064, decided May 23, 2016) (citation and punctuation omitted).

[8] We note that Olds has not argued in this Court that the evidence of the other acts was insufficient to show that he actually committed those acts. In any event, the other acts evidence in this case clearly satisfies the third requirement to admit evidence under Rule 404 (b). See note 4, supra.

9

the first case in which this Court had occasion to address Rule 404 (b). See

Bradshaw, 296 Ga. at 656 (3). Although Bradshaw correctly identified the

general requirements for the admission of evidence of other acts, we now

acknowledge that our application of those requirements in Bradshaw may have

caused some confusion.

The defendant in Bradshaw was convicted of murder and several other

crimes, all in connection with the killings of two individuals who had cheated

the defendant in a drug transaction. See 296 Ga. at 651-652 (1). At trial, the jury

heard evidence of an incident in Ohio in which the defendant had killed a man

who had failed to pay for drugs, only a few months before the killings in

Georgia. See id. at 652 (1). The trial court admitted the evidence of the other

killing under Rule 404 (b) to prove identity, intent, and motive. See id. The

defendant claimed on appeal that the admission of this evidence was an abuse

of discretion, but we rejected that claim of error and affirmed. See id. at 655-658

(3). In doing so, we held that the evidence properly was admitted to show intent

and motive.[9] See id. at 656-657 (3).

---

[9] Because we determined in Bradshaw that the evidence of the Ohio killing was
properly admitted to show intent and motive, we did not consider whether it also was
admissible to prove identity. See 296 Ga. at 657 (3), n. 5. Since Bradshaw, we have

10

Addressing whether the evidence of the Ohio killing was relevant to show intent, our opinion in Bradshaw quoted the following passage from United States v. Edouard, 485 F3d 1324, 1345 (11th Cir. 2007):

> [A] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test [requiring relevance to some issue other than character] is satisfied.

296 Ga. at 656-657 (3) (punctuation omitted). We then concluded that, "[b]ecause the murder of the victim in this case and the Ohio case involve the same mental state and [the defendant] did not take steps to remove intent as an issue, evidence of the Ohio murder was relevant to establish his intent." Id. at 657 (3). After concluding that the Ohio killing also was relevant to show motive, we turned to the second requirement for the admission of other acts evidence, admissibility under Rule 403. As to the second requirement, we noted

---

addressed the admissibility of evidence of other acts to prove identity in Brannon, 298 Ga. at 607 (4), and Brooks, ___ Ga. at ___ (2).

11

that the Ohio killing and the crimes in Georgia with which the defendant was charged were factually similar and close in time, and we said that the evidence of the Ohio killing was "needed by the State to help establish that [the defendant] and not [another man who had accompanied the defendant at the time of the Georgia killings] was the shooter." Id. at 657 (3). In light of these circumstances, we held that the probative value of the evidence of the Ohio killing was not substantially outweighed by the danger of unfair prejudice. See id. (3). Finally, we held that the evidence of the Ohio killing was sufficient to permit the jury to find that the defendant committed that crime. See id. at 658 (3).

With the benefit of hindsight, we now see that our discussion of intent in Bradshaw may have confused the lower courts, especially with respect to the second requirement for other acts evidence. To begin, we were right to say that intent was put in issue by the defendant entering a plea of not guilty. That such a plea puts the State to its burden of proving each and every element of the crimes charged is beyond dispute. See Jones v. State, 272 Ga. 900, 902 (2) (537 SE2d 80) (2000). A culpable state of mind — intent or criminal negligence — is an essential element of every crime, see Henderson v. Hames, 287 Ga. 534,

538 (3) (697 SE2d 798) (2010), and in Bradshaw, the defendant was charged with crimes of intent. Moreover, we were right to say in Bradshaw that evidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has *some* tendency to make more or less probable — that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances. See generally 2 Weinstein's Federal Evidence § 404.22 (1) (a) ("The requisite intent may be inferred from the fact that, after being involved in a number of similar incidents, the defendant must have had a mental state that is inconsistent with innocence."); Mueller & Kirkpatrick, Evidence § 4.22 (1995) ("Prior conduct by the defendant often sheds light on his state of mind at the time of the event in question."). See also Jones, 297 Ga. at 161 (2), n. 6; United States v. Wyatt, 762 F2d 908, 910 (I) (A) (1) (11th Cir. 1985). For these reasons, we were correct in Bradshaw to conclude that evidence of the Ohio killing — which involved the same sort of intent as required to prove the crimes with which the defendant was charged in Georgia — was "relevant" and satisfied the first requirement for the admission of such evidence under Rule 404 (b).

13

By our reliance on Edouard, however, we inadvertently may have intimated too much about the probative value of such evidence when offered to prove intent. We cited Edouard for the propositions, among others, that a plea of not guilty "imposes a *substantial burden* on the government to prove intent" and that the prosecution ordinarily "*may prove [intent] by qualifying Rule 404 (b) evidence* absent affirmative steps by the defendant to remove intent as an issue." Bradshaw, 296 Ga. at 656-657 (3) (quoting Edouard) (emphasis supplied). Read in isolation, the statements from Edouard that we quoted in Bradshaw reasonably could be understood to suggest that the burden of proving intent always and inevitably is an especially difficult burden for the prosecution and that evidence of other acts that tend in any way to prove intent ordinarily will be admissible for that purpose. But unlike Bradshaw — and unlike this case — Edouard was a conspiracy case.[10] The cases cited in Edouard for these propositions also were conspiracy cases. See Edouard, 485 F3d at 1345 (citing cases).[11] And as the decisional law of the Eleventh Circuit has recognized,

---

[10] The defendant in Edouard was charged with conspiracy to import cocaine, conspiracy to commit money laundering, and money laundering. See 485 F3d at 1331.

[11] Edouard relied on United States v. Dickerson, 248 F3d 1036 (11th Cir. 2001) (conspiracy to possess cocaine with intent to distribute), United States v. Zapata, 139 F3d

14

conspiracy cases frequently present especially difficult problems of proof for the prosecution with respect to intent.

In the first place, intent often is the principal disputed issue in a conspiracy case. Moreover, as the former Fifth Circuit[12] explained:

> Charges of conspiracy involve considerations not present in other criminal prosecutions. The offense of conspiracy requires an element of intent or knowledge which is often difficult to prove. Because the prosecution must prove that the defendant knowingly joined a plan to commit a crime, evidence that establishes a defendant's participation in a criminal act, or evidence establishing his association with co-conspirators, may be insufficient to support the inference that the defendant voluntarily joined a conspiracy to commit a crime. Intent is particularly difficult to prove when a defendant is a passive or minor actor in a criminal drama. If the evidence linking a defendant is subject to an innocent interpretation, the government may be forced to present some independent evidence of intent to withstand a motion for directed verdict. Moreover, if the government does not present intent evidence in its case in chief the defendant may simply rest and argue lack of intent to the jury without giving the government the opportunity to present such evidence in rebuttal.

---

1355 (11th Cir. 1998) (conspiracy to distribute marijuana and possess marijuana with intent to distribute), and United States v. Dorsey, 819 F2d 1055 (11th Cir. 1987) (conspiracy to import marijuana and possess marijuana with intent to distribute).

[12] After the Eleventh Circuit was carved out of the old Fifth Circuit, the Eleventh Circuit adopted all decisions of the former Fifth Circuit rendered prior to October 1, 1981 as binding precedents. See Bonner v. City of Prichard, 661 F2d 1206, 1207 (11th Cir. 1981) (en banc). The decisions of the former Fifth Circuit are, therefore, part of the decisional law of the Eleventh Circuit.

15

Unequivocal evidence that a defendant committed a substantive offense may justify the inference that he intended to do so, but it does not plainly support the conclusion that he agreed and planned with others to commit the crime. Evidence of a defendant's association and dealings with a group of conspirators, even when he knows they intend to commit a crime, does not alone show that he himself had the requisite intent to join the conspiracy. In every conspiracy case, therefore, a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he affirmatively takes the issue of intent out of the case.

United States v. Roberts, 619 F2d 379, 382-383 (II) (5th Cir. 1980) (citations and punctuation omitted). See also United States v. Matthews, 431 F3d 1296, 1311 (V) (11th Cir. 2005) (discussing Roberts). In light of these special concerns about conspiracy cases, the decisional law of the Eleventh Circuit seems to have developed to a point that almost always permits other acts evidence in conspiracy cases when relevant to prove intent, except in those cases in which the accused has taken affirmative steps to eliminate intent as an issue.[13] See

---

[13] This body of decisional law has been criticized by members of the Eleventh Circuit. See, e.g., Matthews, 431 F3d at 1315-1319 (I) (Tjoflat, J., concurring) (asserting that Eleventh Circuit precedents embrace "a categorical-relevancy doctrine that presumes that virtually all prior drug offenses are relevant and almost automatically admissible in all drug conspiracy cases"). And other federal appeals courts have squarely rejected a categorical approach to Federal Rule of Evidence 404 (b) in cases in which other acts evidence is offered to prove intent. See, e.g., United States v. Miller, 673 F3d 688, 697 (III) (7th Cir. 2012)

16

Matthews, 431 F3d at 1315 (Tjoflat, J., concurring). See also United States v. Butler, 102 F3d 1191, 1196 (II) (A) (11th Cir. 1997); United States v. Pollock, 926 F2d 1044, 1049 (11th Cir. 1991). The portion of Edouard upon which we relied in Bradshaw is a part of this body of decisional law, and it reflects these special concerns about the burden to prove intent in conspiracy cases. The notion that the prosecution inevitably has an especially difficult burden to prove intent, and the suggestion that any relevant evidence of other acts ordinarily should be admitted for the purpose of proving intent (unless intent is affirmatively taken out of the case), do not necessarily hold in other contexts.

Our failure to appreciate that Edouard is in significant part about the unique problems of proof in conspiracy cases, however, does not mean that our conclusion in Bradshaw about the *relevance* of evidence of other acts offered to prove intent was incorrect. Again, as we noted earlier, evidence has "relevance" if it has "*any tendency* to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401 (emphasis supplied). See also Jones, 297 Ga. at 159 (2), n. 2 ("Regardless of how one views the language of

("Rule 404 (b) requires a case-by-case determination, not a categorical one.").

Rule 401, however, it is clear that the relevance standard codified therein is a liberal one." (Citation omitted)). And because a plea of not guilty puts the prosecution to its burden of proving every element of the crime — including intent — evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant. That is true in conspiracy and non-conspiracy cases alike. See Imwinkelried, Uncharged Misconduct Evidence § 5.10, p. 37 (2009 and Supp. 2012-2013) ("The better view is that uncharged misconduct can be relevant and admissible to prove intent in both general and specific intent cases."). And it is true whether or not intent is actively disputed at trial. See Old Chief v. United States, 519 U. S. 172, 179 (II) (A) (117 SCt 644, 136 LE2d 574) (1997) (citing Federal Rule of Evidence 401, Advisory Committee Notes). By relying on Edouard in Bradshaw, however, we may have implied that such evidence inevitably has more probative value than it may, in fact, have in a particular case. And an accurate assessment of probative value is an essential part of a proper application of Rule 403, which embodies the second requirement for the admission of evidence of other acts under Rule 404 (b).

Relevance and probative value are related, but distinct, concepts. Relevance is a binary concept — evidence is relevant or it is not — but probative value is relative. Evidence is relevant if it has "*any tendency*" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. See Milich, Georgia Rules of Evidence § 6.1 (2015) ("Probative value refers to the strength of the connection between the evidence and what it is offered to prove.").[14] Probative value also depends on the marginal worth of the evidence — how much it adds,

[14] See also Carlson & Imwinkelried et al., Evidence: Teaching Materials for an Age of Science and Statutes, p. 274 (7th ed. 2012) (in determining probative value, court may consider "patent flaws such as facial vagueness or uncertainty in the proposed testimony," "the number of intermediate propositions between the item of evidence and the ultimate consequential fact that the item is offered to prove," and "the logical strength of the inference from the item to the consequential fact that it is offered to prove"); Mueller & Kirkpatrick, supra, § 4.21 ("The strength of the evidence in establishing the point it is offered to prove is properly considered by courts in undertaking [Rule] 403 balancing."); Graham, 22B Fed. Practice & Proc. Evid. § 5250 (2016) ("Another factor that bears on the probative worth of other crimes evidence is the strength or weakness of the proof of that crime.").

19

in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. See 2 Weinstein's Fed. Evid. § 404.21 [3] [a] ("[T]he availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence.").[15] And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence. See Mueller & Kirkpatrick, supra, § 4.21 ("The more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point.").[16] Generally speaking, in conspiracy cases, quality evidence of other acts that tends to prove criminal intent ordinarily will have substantial probative value, both because intent often is disputed in such cases, and because the prosecution frequently will find itself

[15] See also Milich, supra, § 6.4 ("If the evidence offered is cumulative of other evidence already admitted, its probative value is limited to the additional strength it gives the point already made."); Mueller & Kirkpatrick, Evidence § 4.21 (1995) ("If the evidence . . . is cumulative of evidence already introduced, exclusion is more likely.").

[16] See also Milich, supra, § 6.4 ("The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point."). We note as well that a party may reduce the need for evidence on a particular point by express stipulation. See Hood v. State, ___ Ga. ___, ___ (4) (Case No. S16A0064, decided May 23, 2016). See also Old Chief, 519 U. S. at 188-189 (II) (B) (3).

20

without other strong proof of intent. That may or may not be true in non-conspiracy cases, in which the second requirement of Rule 404 (b) — that other acts evidence passes the Rule 403 test — calls for a careful, case-by-case analysis, not a categorical approach.[17]

3. As we noted earlier, the Court of Appeals in this case relied extensively on our decision in Bradshaw to determine that the evidence concerning the other women assaulted by Olds was properly admitted under Rule 404 (b) to prove intent. The Court of Appeals appears to have concluded that the second requirement for the admission of evidence of other acts was satisfied because the

---

[17] Our clarification of Bradshaw should not be understood to imply that the result in Bradshaw was wrong. In the first place, the identity of the killer appears to have been disputed in Bradshaw. See 296 Ga. at 657 (acknowledging prosecution's need to show that the defendant — and not a man who accompanied him to the scene of the killing — was the shooter). That, in turn, may have raised a disputed issue about intent. After all, if the principal in the killing was not the defendant, but rather, was the man who accompanied the defendant to the scene, a question then would have arisen about whether the defendant was a party to the crime as an accomplice, which would have depended substantially upon his intent. Moreover, the other acts evidence in Bradshaw was admitted to show motive as well as intent.

We note as well that, in Jones, 297 Ga. at 161 (2), n. 4, we relied on Bradshaw and the Eleventh Circuit conspiracy cases to hold that the defendant had put intent in issue simply by pleading not guilty. But later in Jones, we noted that the defendant had asserted a defense that raised "[a] genuine issue regarding whether Jones was voluntarily driving while under the influence of alcohol," id. at 161 (2), and we also acknowledged that the Rule 403 test has "no mechanical solution" and instead requires a careful, case-by-case consideration of probative value, unfair prejudice, the risks of confusion or misleading the jury, delay, waste of time, and the cumulative nature of the evidence. Id. at 163 (3).

21

prosecution had a "substantial burden" to prove intent and the evidence of Olds'

other crimes, therefore, had substantial probative value with respect to intent

principally because those crimes were very similar to the crimes with which

Olds was charged. 332 Ga. App. at 616. Given the way in which we relied on

Edouard in Bradshaw — suggesting that proof of intent is a "substantial burden"

for the prosecution in every case in which the defendant pleads not guilty, and

implying that evidence of other acts ordinarily ought to be admitted for the

purpose of intent — that the Court of Appeals reached this conclusion is quite

understandable. As we have explained today, however, the propositions for

which we cited Edouard do not always hold in non-conspiracy cases, and the

contention that the trial court in this case abused its discretion when it admitted

evidence concerning the other women requires further consideration. We do not

mean to suggest that admitting that evidence for intent — or for any of the other

purposes that the Court of Appeals did not reach in its earlier consideration of

the case — was, in fact, an abuse of discretion. We do not decide that question.

Instead, we leave it for the Court of Appeals.[18] The judgment of the Court of

---

[18] As for intent, we note, for instance, that Olds was charged in this case not only with the false imprisonment and battery of which he was convicted, but also kidnapping and aggravated assault with intent to rape, crimes of which he was acquitted. One of the incidents

Appeals is vacated, and this case is remanded for reconsideration in light of this opinion.

Judgment vacated and case remanded with direction. All the Justices concur.

---

concerning the other women involved not only an assault, but a *sexual* assault. And the prosecution offered evidence of that incident not only to show an intent to do violence to women with whom Olds was acquainted, but also to show a specific intent to commit a sexual assault. Evidence of that incident, therefore, may have had added probative value with respect to the specific intent element of the aggravated assault charge. And although Olds may principally have defended at trial on the ground that the events described by the victim never happened, the record indicates that he asked for — and received — a jury charge on sexual battery as a lesser included offense of aggravated assault. Despite the nomenclature, sexual battery "does not require any *sexual* contact at all. Rather . . . it involves non-consensual, intentional physical contact with a victim's intimate body parts." Watson v. State, 297 Ga. 718, 720 (2) (777 SE2d 677) (2015). By requesting that jury charge, Olds *did* effectively dispute the specific intent element of the aggravated assault.

To what extent that circumstance impacts the probative value to be assigned to the evidence of the extrinsic incident involving a sexual assault — and whether, even if evidence of that incident properly were admitted, the admission of evidence concerning the other woman was reversible error — are questions that have not been fully briefed in this Court. Nor have the parties fully briefed in this Court the alternative purposes for which the trial court admitted the evidence of other acts. Rather, the parties have limited their briefs to the soundness of Bradshaw, the issue on which we granted certiorari. For these reasons, we are in no position to decide the ultimate question, and we leave that decision to the Court of Appeals on remand.