**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**August 21, 2019**

# In the Court of Appeals of Georgia

A19A1391. ESPINOSA v. THE STATE.

MERCIER, Judge.

A jury found Justo Espinosa guilty of four counts of child molestation and one count of criminal attempt to commit child molestation (as a lesser-included offense of child molestation - Count 5), for acts involving three children his girlfriend was babysitting.[1] Espinosa appeals the convictions entered on the verdict and the partial

---

[1] Count 1 of the indictment pertinently alleged that, Espinosa committed the offense of child molestation by touching the vaginal area of E. C., a child, with his hand; Count 2 alleged that Espinosa committed the offense of child molestation by exposing his penis to E. C., a child, and putting the child's hand on his penis; Count 3 alleged that Espinosa committed the offense of child molestation by kissing E. C., a child, on her mouth; Count 4 alleged that Espinosa committed the offense of child molestation by touching the vaginal area of R. C., a child, with his hand; and Count 5 alleged that Espinosa committed the offense of child molestation by touching the vaginal area of C. C., a child, with his hand. All counts alleged that Espinosa committed the offenses between December 12, 2011 and December 16, 2011.

denial of his motion for new trial, contending that the evidence was insufficient to support one of the child molestation counts (Count 4), that the court erred in disallowing certain testimony from a defense witness, and that trial counsel provided ineffective assistance.[2] Because the evidence was insufficient as to Count 4, we reverse the judgment as to that conviction. However, Espinosa's other contentions are without merit, so we affirm the judgment as to the remaining counts.

1. Espinosa contends that the evidence was insufficient to prove Count 4 of the indictment. We agree.

> When an appellant challenges the sufficiency of the evidence to support the conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.

*English v. State*, 301 Ga. App. 842 (689 SE2d 130) (2010) (citations and punctuation omitted).

---

[2] The trial court denied the motion for new trial in part and granted it in part; as to the latter, the court conducted a new hearing on a sentencing matter.

2

So viewed, the evidence introduced at trial included the following. Beginning in 2011, the mother of three girls, E. C., R. C., and C. C., left the children at the home of a babysitter for before- and after- school care while she worked.[3] The babysitter was Espinosa's live-in girlfriend.[4] In January 2012, R. C. told her mother she was "very happy because [the babysitter]" was going to call the police. The mother asked R. C. why she was happy and why the babysitter was going to call the police. R. C. replied that Espinosa "was trying to touch her." The mother then spoke with E. C., who told her that Espinosa had kissed her on the mouth while she was sleeping. The mother next spoke to C. C., who told her that Espinosa had hugged and tried to undress the children. The mother contacted police to report the allegations.

Forensic interviews were conducted separately with each of the children. The interviews were videotaped and the recordings were played for the jury. The interviewer, who was deemed an expert in forensic interviewing, testified at trial.

---

[3] At the time of the trial (April 20, 2015), E. C. was 12 years old, R. C. was 10 years old, and C. C. was 9 years old.

[4] At trial, some witnesses also referred to the babysitter as Espinosa's wife.

In her interview, E. C. stated that Espinosa kissed her on the mouth, touched her vaginal area with his hand, exposed his penis, and made her touch his exposed penis with her hand. E. C. described in detail Espinosa's conduct and the circumstances surrounding them, and described with specificity various events that were happening at the time and her physical reactions to his conduct. E. C. said she had been afraid to report the incidents. At trial, the interviewer testified that she did not observe any signs of coaching.

In her interview, R. C. reported that Espinosa touched her stomach and tried to touch her vaginal area and buttocks, but that he did not succeed because she pushed his hand away. R. C. also saw Espinosa try to kiss E. C., but he stopped when he saw that R. C. was watching. R. C. told the babysitter what Espinosa did, and the babysitter told Espinosa that if he did not stop, she would call the police. R. C. added that the babysitter saw Espinosa "do things" to them, and that the babysitter screamed at Espinosa and said she was going to tell the police what he was doing, but that "every time [the babysitter] says that, she forgets" to do so. R. C.'s descriptions of the acts and surrounding circumstances were detailed and consistent with her sisters' accounts.

In her interview, C. C. reported that Espinosa tried to kiss her on the mouth, but that she ran and told the babysitter. C. C. also stated that on one occasion Espinosa tried to touch her "private part" with his hand, but that she stopped him by kicking him and went to tell the babysitter that he was touching her. When the interviewer asked C. C. if Espinosa had touched her private part, the child replied, "Yes. No," and continued to give conflicting answers to that question throughout the interview. The interviewer said, "It's okay, either way. I just don't understand. Was he trying to touch your private part or did he touch that part?" C. C. replied that Espinosa did touch her private part, and then described the manner in which he had done so. The interviewer, who was trained to identify signs of coaching, testified at trial that she did not see indicators that C. C. had been coached.[5] The interviewer added that each of the children said "something to the fact (sic) that [the babysitter] was going to call . . . the police if [Espinosa] didn't stop."

All three children testified at trial. E. C. testified that she told the forensic interviewer the truth and that no one told her what to say. R. C. testified that Espinosa had tried to touch her, but that he could not because she moved his hand away. When

_____

[5] It appears that the interviewer was not asked this question at trial regarding R. C.

asked if she had told the interviewer the truth about what happened, R. C. replied that she had. She also testified that she told her mother that Espinosa "was trying to touch us." C. C. testified that she told the interviewer the truth about somebody touching her, and confirmed that she "told [her] mom that something bad had happened" at the babysitter's house.

OCGA § 16-6-4 (a) provides, in relevant part, that "[a] person commits the offense of child molestation when such person: (1) [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" Count 4 alleged that Espinosa committed the offense of child molestation by touching the vaginal area of R. C., a child, with his hand.

As recounted above, R. C. testified at trial that Espinosa had *tried* to touch her vaginal area, but never actually did so because she moved his hand. And in her forensic interview, she stated that Espinosa had *attempted* to touch her vaginal area and buttocks but that he was unable to do so. R. C.'s mother testified that R. C. told her that Espinosa had tried to touch her. There was no evidence that Espinosa touched R. C.'s vaginal area. Given this lack of evidence, the conviction for child molestation involving R. C. cannot stand. See *Woods v. State*, 244 Ga. App. 359, 360 (2) (535

6

SE2d 524) (2000) (reversing defendant's conviction of child molestation because there was no evidence that he fondled or touched the child's vagina, as alleged in the indictment).

2. Espinosa contends that the trial court erred by not allowing defense counsel to ask a character witness for the defense his opinion of Espinosa. Georgia's appellate courts review a trial court's decision to admit or refuse to admit evidence for abuse of discretion. *Hawkins v. State*, 304 Ga. 299, 303-304 (4) (818 SE2d 513) (2018). Because the trial court's alleged error was an evidentiary ruling, the test for determining whether that nonconstitutional error was harmless "is whether it is highly probable that the [alleged] error did not contribute to the verdict." *Perez v. State*, 303 Ga. 188, 191 (2) (811 SE2d 331) (2018).

OCGA § 24-4-405 (a) pertinently provides that, in proceedings in which evidence of a person's character is admissible, proof of such shall be made by testimony as to reputation or by testimony in the form of an opinion.

At trial, Espinosa called a pastor to testify as a character witness on Espinosa's behalf. The babysitter and the children's mother were members of the pastor's church. During direct examination, defense counsel asked the pastor, "What is your opinion of Mr. Espinosa?" The trial court then summoned the attorneys to the bench and

conducted an unrecorded bench conference. Espinosa states that in the bench conference the court ruled that defense counsel would not be permitted to ask the pastor his opinion of Espinosa. When defense counsel resumed her direct examination, she asked the pastor, "And what is Mr. Espinosa's reputation in the community?" The pastor replied, "Well, in the community I cannot speak to that as in general[.]" Defense counsel asked the pastor if Espinosa attended his church. The pastor replied: "No . . . he did not. What I know from Mr. Espinosa is my visits to the . . . prison . . . for the last three years." Defense counsel asked the pastor no further questions.

The record does not show what transpired in the unrecorded bench conference, and this Court can only speculate as to what the trial court said, what counsel argued, and what ruling the court made (if any) during the bench conference.

> Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41(f). Where the complaining party fails to complete the record under this provision, that party fails to carry his burden of showing by the record the facts necessary to establish his point. Thus, the issue is not preserved for review.

8

*Connolly v. Smock*, 338 Ga. App. 754, 758 (1) (791 SE2d 853) (2016) (citations and punctuation omitted); see generally *Maddox v. State*, 346 Ga. App. 674, 679-680 (1) (816 SE2d 796) (2018) (an issue that is not specifically raised in or ruled on by the trial court is not preserved for appellate review). The enumerated error was not preserved for appellate review.

3. Espinosa contends that trial counsel provided ineffective assistance. The contention is without merit.

In order to establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); see *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017). "[T]o prove that he was prejudiced by this deficient performance, [Espinosa] must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland*, 466 U. S. at 694 (III) (B)." *Wofford v. State*, 305 Ga. 694, 696 (2) (827 SE2d 652) (2019) (citations and punctuation omitted). Should a defendant fail to meet his burden on one

9

prong of this two-prong test, we need not review the other prong. *Gomez*, supra; *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Espinosa argues that trial counsel was ineffective because she failed to preserve her objection on the record after the trial court denied her the opportunity to question the pastor regarding his opinion of Espinosa's good character. See generally *Maddox*, supra; *Whitehead v. State*, 287 Ga. 242, 246 (2) (695 SE2d 255) (2010) (reiterating general rule that a party is required to make and obtain a ruling on an objection to evidence in the trial court in order to preserve the issue for appeal).

However, Espinosa has not shown harm by the court's exclusion of the expected testimony. He asserts that had the trial court not curtailed defense counsel's examination of the pastor, the jury would have heard the following: that the babysitter and the neighbors spoke well of Espinosa; that the pastor had never heard anyone speak negatively of Espinosa; that Espinosa was kind and worried about his family; and that Espinosa was a fine gentleman.

The pastor's testimony at the hearing on the motion for new trial was generally consistent with Espinosa's summary of his expected testimony. But the pastor also testified that he had only known Espinosa "very brief[ly] before" his arrest; that they had not spoken much until Espinosa was arrested and jailed for the charged offenses;

and that Espinosa was kind and worried for his family during his period of incarceration. The pastor conceded that he had no knowledge of whether Espinosa was trustworthy around children. Considering the substance of the pastor's expected testimony and the evidence introduced at trial, there has been no showing that but for counsel's alleged error in failing to preserve an objection to the ruling the result of the trial would have been different. See generally *Strickland*, supra. Thus, Espinosa has failed to establish that he was prejudiced by counsel's failure to preserve the issue for appeal. See generally *McAllister v. State*, _Ga. App._ (6) (a) (_ SE2d _) (2019) (Case No. A19A0613).

(b) Espinosa asserts that trial counsel was ineffective because she failed to object to the admission of his alleged prior bad acts. In her forensic interview, E. C. stated that Espinosa was "mean" because he always hits his girlfriend (the babysitter); when asked to explain, E. C. said that she saw him hit the babysitter's arm and that he broke the babysitter's finger. Defense counsel did not object when the forensic interview containing the statement was played for the jury.

OCGA § 24-4-404 (b) pertinently provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity

11

therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Olds v. State*, 299 Ga. 65 (786 SE2d 633) (2016), the Supreme Court

identified three general requirements for the admission of evidence of other acts under Rule 404 (b). First, such evidence must be relevant to some issue other than character. . . .[T]o determine whether such evidence actually is "relevant" for a particular [permissible] purpose, we look to OCGA § 24-4-401 . . ., which deems evidence relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Second, for evidence of other acts to be admitted under Rule 404 (b), the evidence must pass the test of OCGA § 24-4-403 . . ., which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts[.] [Third], evidence of other acts is admissible under Rule 404 (b) only to the extent that the evidence is sufficient to permit a jury to conclude by a preponderance of the proof that the person with whom the evidence is concerned actually committed the other acts in question.

Id. at 69-70 (2) (citations and punctuation omitted).

12

Espinosa argues that the alleged prior bad acts were not relevant to the child molestation charges and that any probative value of the evidence was substantially outweighed by its prejudicial value. The trial court did not abuse its discretion in admitting the evidence.

> The limitations and prohibition on "other acts" evidence set out in OCGA § 24-4-404 (b) do not apply to "intrinsic evidence." This Court and the Eleventh Circuit have both set out factors defining this type of evidence: Evidence is admissible as intrinsic evidence when it is "(1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to 'complete the story of the crime'; or (3) 'inextricably intertwined with the evidence regarding the charged offense.'" Intrinsic evidence must also satisfy Rule 403.

*Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) (citations and punctuation omitted).

R. C. stated in her forensic interview that the babysitter witnessed some of the acts of molestation and said she was going to report Espinosa to the police. R. C. said that "every time [the babysitter] says that, she forgets." Evidence that Espinosa physically abused the babysitter could have explained why she did not report him to police. Further, R. C. told her mother that she was happy that the babysitter was going

to call the police, and that statement immediately led to the children's outcry to their mother. Evidence involving Espinosa's treatment of the babysitter pertained to the chain of events in the case and was linked by time and circumstances with the charged offenses. See *Williams*, supra at 486. The evidence was inextricably intertwined with the charged offenses and was admissible as intrinsic evidence. Id. The trial court would not have abused its discretion in finding that the evidence was relevant and that its probative value was not substantially outweighed by its prejudicial value. See id.; *Olds*, supra. The evidence was not barred by Rule 404 (b), and trial counsel was not ineffective for not objecting. See *Williams*, supra at 487 (IV) (d).

(c) Espinosa maintains that counsel was ineffective because she failed to impeach a defense witness with the witness's prior inconsistent statements. Espinosa asserts that before trial, the babysitter's neighbor told an investigator for the defense that the children told her that their mother told them to make up the allegations because Espinosa did not want the babysitter to continue taking care of the girls; he allegedly wanted the babysitter to focus on caring for their own child. When the neighbor took the stand at trial, she testified that the babysitter brought the children to her one day so she would babysit them; that was months after Espinosa was

14

arrested. The neighbor testified that the children told her that after their mother called the police, the babysitter did not want to watch them any longer. Asked if the children told her anything about what they had told law enforcement officers and whether they said they were truthful when they spoke to the officers, the neighbor testified that the children did not tell her anything about what they had told police, and that all they told her was that Espinosa had been "caught" and was in jail. The neighbor was not asked if she had told the investigator that the children were told to fabricate the story, and defense counsel did not clearly confront the neighbor with her alleged prior statement. The neighbor was not called as a witness at the hearing on the motion for new trial; the investigator was called and did testify at the hearing.

Citing OCGA § 24-6-613 (b) and *Murdock v. State*, 299 Ga. 177 (787 SE2d 184) (2016), Espinosa asserts that defense counsel could have impeached the neighbor with her prior inconsistent statements to the investigator by calling the investigator as a witness at trial.

OCGA § 24-6-613 (b) pertinently provides that "extrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the

opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require."

Here, the neighbor was not called as a witness at the hearing on the motion for new trial. We do not know what she would have said had she been given the opportunity to explain or deny the prior statements. See generally *Wofford*, supra at 697 (2) (a); *Bell v. State*, 287 Ga. 670, 675 (3) (697 SE2d 793) (2010) ("[T]o demonstrate prejudice for the alleged failure to elicit testimony, the defendant may not rely on hearsay or speculation but must either call the witness or introduce a legally recognized substitute for the uncalled witness's testimony."). Consequently, Espinosa has not shown he was prejudiced by his counsel's failure to introduce extrinsic evidence of the neighbor's alleged prior statements.

Espinosa's reliance on *Murdock* is misplaced because that case did not involve an ineffective assistance of counsel claim, and the witness in that case apparently was confronted with her prior statement. *Murdock*, supra at 179-180 (4). In any event, there is no reasonable probability that the outcome of the trial would have been different had counsel elicited the investigator's testimony. See generally *Williams*, supra at 483 (IV) (b).

Moreover, we conclude that the deficiencies discussed above that arguably existed in trial counsel's performance, even considered in combination, did not in reasonable probability change the outcome of Espinosa's trial. See *Schofield v. Holsey*, 281 Ga. 809, 811-812, n. 1 (642 SE2d 56) (2007) (holding that the combined effect of counsel's deficiencies should be considered). Accordingly, the trial court properly denied Espinosa's ineffective assistance of counsel claim. See *Rice v. State*, 292 Ga. 191, 204-205 (9) (733 SE2d 755) (2012), overruled in part on other grounds in *Willis v. State*, 304 Ga. 686, 707 (11), n. 3 (820 SE2d 640) (2018). See generally *Gomez*, supra at 574.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Brown, J., concur*.