**NOTICE:** This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 4, 2025

S24G0816. THE STATE v. GREEN.

LAGRUA, Justice.

Appellee Billy Ray Green was convicted of attempt to entice a child for indecent purposes and other crimes arising from his March 12, 2021 interaction with a 15-year-old female, A.H.[1] The Court of Appeals reversed this conviction as unsupported by sufficient evidence pursuant to *Jackson v. Virginia,* 443 U.S. 307, 309 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), and its progeny. See *Green v.*

---

[1] Green was also convicted of criminal attempt to commit kidnapping, criminal attempt to commit false imprisonment, and simple assault, but only the conviction for attempt to entice a child for indecent purposes ("attempted enticement") is at issue here. This crime is committed "when, with intent to commit [enticement]," a defendant "performs any act which constitutes a substantial step toward the commission of [enticement]." OCGA § 16-4-1. See OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."). The indictment alleged that Green "attempt[ed] to commit the crime of [enticement], in violation of [OCGA § 16-6-5], in that said accused did attempt to entice [A.H.], a child less than 16 years of age, to enter his vehicle for the purpose of committing indecent acts . . ."

*State*, 371 Ga. App. 259, 262-264 (2) (899 SE2d 493) (2024). The State sought certiorari, arguing that the Court of Appeals misapplied sufficiency standards with respect to this conviction by treating certain evidence (referred to herein as the "CVS evidence") as not relevant to the issue of Green's intent. We granted review to consider whether evidence that a defendant made unwanted, sexually suggestive comments to an adult is evidence relevant to whether the defendant's later solicitation, enticement, or taking of a minor was done "for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). In this case, we answer our certiorari question affirmatively and agree with the State that the CVS evidence is relevant to Green's intent to entice A.H. Thus, we conclude that it was error for the Court of Appeals to hold otherwise, and that, when properly considered in the context of a sufficiency challenge, the CVS evidence is sufficient on the issue of Green's intent to uphold the attempted enticement conviction. Therefore, we reverse the decision of the Court of Appeals in part and affirm Green's conviction.

1. *Background*

(a) The evidence presented at trial showed the following. Around 5:30 p.m. on March 12, 2021, A.H. was walking her dog in her neighborhood when a car driven by Green pulled up beside her. Green told A.H. that her father, Jamie – whom Green referred to by name – had called and asked for Green to bring A.H. to him. A.H. testified that she did not know or recognize Green, and Jamie testified to the same. Green then opened the passenger side door of his car, reached his arm out toward A.H., and gestured for her to get in. A.H. testified that Green became mad when she declined his request, but that Green did not threaten her, touch her, or say anything to her that was sexual in nature. About this same time, one of A.H.'s neighbors pulled into the neighborhood, and Green "sped off." A.H. called her father, and then 911. During the 911 call, which was played at Green's trial, A.H. told the operator that "a guy just tried to kidnap [her]," and she described the perpetrator as a white male in his 50's or 60's with long hair driving a small red car.

Officers with the Barrow County Sheriff's Office ("BCSO"),

including Sgt. William Meeler, responded to A.H.'s location within minutes.[2] BCSO Sgt. Garrett Guest also responded to the 911 call and was a few minutes from A.H.'s location when he spotted a car in a nearby CVS parking lot that matched the description given by A.H. Sgt. Guest pulled into the CVS parking lot and made contact with the driver, who identified himself as Green.[3] In their conversation, Green repeatedly said he had been at the CVS "all day," but also gave Sgt. Guest conflicting versions of his activities that day. A few minutes later, Sgt. Guest entered the CVS to obtain security camera footage and learned from an employee that Green had tried to "lure" female CVS employees into his car earlier that day. When Sgt. Guest walked back outside, he asked Green whether he had talked to any CVS employees that day, and Green affirmed he had asked two "young girls" if they wanted to "hang out." BCSO officers decided to conduct a showup, and Sgt. Meeler drove A.H. to

---

[2] Sgt. Meeler's bodycam footage was admitted into evidence, which depicts A.H. describing the perpetrator, his car, and their encounter.

[3] Sgt. Guest's bodycam footage was admitted into evidence, which depicts his interactions with Green in the CVS parking lot.

the CVS, where she positively identified Green.[4] Green was subsequently arrested.[5]

Evidence specific to Green's interactions with two CVS employees (the "CVS evidence") was presented at trial through the testimony of those employees, both of whom were female, aged 39 and 27, respectively.[6] Their testimony collectively showed that around lunchtime on March 12, Green entered the CVS, feigned injury, and asked the two employees if they could help him get to his car. Both declined, offering instead to get their manager or call 911. Green insisted that he did not want them to call their manager or

---

[4] A "showup" is "[a] police procedure in which a suspect is shown singly to a witness for identification, rather than as part of a lineup." Showup, Black's Law Dictionary (12th ed. 2024).

[5] In a later search of Green's car, two softball bats and a stuffed unicorn were found inside.

[6] The trial court held in a pre-trial order that the CVS evidence was "admissible as intrinsic evidence because it was necessary to complete the story of the crimes charged in the indictment[,]" and that "the probative value of the [CVS] evidence was not substantially outweighed by the danger of unfair prejudice," such that the balance was struck in favor of admissibility under OCGA § 24-4-403 ("Rule 403"). This pre-trial order also held the CVS evidence was admissible as extrinsic other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"), but "at trial, the State stated that it was simply offering the [CVS] evidence as intrinsic evidence and withdrew its request for a jury instruction on other acts evidence." *Green,* 371 Ga. App. at 264 (4), n.7.

911, and when they went to do so, Green "bolted" out the door to his car. One of the employees recalled the other suggesting: "I don't think that man was hurt . . . I think he was just trying to get us out there."

The 27-year-old employee testified that she left for lunch shortly after this incident and asked her manager to watch her leave because she was "90 percent sure [Green] was still out there." When she returned around 45 minutes later, Green's car was still in the CVS parking lot but had been moved into the spot where the employee's car had previously been. While this employee "thought that was very strange," she did not interact with Green again, but still asked her manager to watch her leave at the end of her shift that day.

The 39-year-old employee testified to additional interactions with Green on March 12. She testified that, when she walked outside for a smoke break in the afternoon, Green asked her "are you ready for a good time?" Not wanting to "egg him on," she ignored Green, continued to her car, took her smoke break, and went back

6

inside the CVS without incident. Then, at the end of her shift, around 5:00 or 5:30 p.m., the employee walked outside to discover Green's car parked next to hers. She told the jury that, "[b]ased on the little comment [Green] made already, it scared the hell out of me," so she got her manager and asked him to watch her leave. As she reached her car, Green told her that he could "show her a few tricks" or "show her a few things." The employee interpreted Green's comments as an attempt "to coax [her] to get in [Green's car] and go do things with him."

At the close of the State's case, Green moved for a directed verdict on the attempted enticement charge. The transcript reflects the following:

> COUNSEL: . . . I'll make a motion for directed verdict on Count Three. Specifically, the victim in the case said that there was -- in any contact between her and Mr. Green, that there was no mention of any kind of sexual advance. And based on her statement, I believe that -- that as a matter of law, that Count Three has to be -- a directed verdict would be appropriate as to Count Three.
>
> . . . .
>
> THE COURT: All right. State's response, please?

7

THE STATE: Yes, Your Honor. Looking at Count Three, it charges Mr. Green with criminal attempt to entice a child for indecent purposes. It talks about the substantial steps that he took to do that. And whether those constituted substantial steps, that would be a question for the jury, but certainly there's some evidence that he took steps to do that.

In terms of what his intent was, obviously that's something the State has to prove beyond a reasonable doubt. It's alleged that he did this with the purpose of committing indecent acts. And [defense counsel] is correct, there was no testimony about any kind of explicit sexual advance towards the victim from Mr. Green, no sexual comment, but the State would argue that there is sufficient circumstantial evidence on his intent based on how he was acting that day towards others. And that gets into the -- the intrinsic evidence with other witnesses from CVS. And what constitutes an indecent act, that's also a question for the jury, but the State would argue there is sufficient evidence to get past the directed verdict.

THE COURT: You get the final word on that motion with respect to that count. Anything else you want to say?

. . . .

COUNSEL: Yeah, and the child themself said that there was no indication of any sexual advance, and I think that's clear, that based on that as to that count, there's no substantial step toward doing something that she said didn't occur. So we feel like, as a matter of law, that we should have a directed verdict as to Count Three.

THE COURT: . . . The Court is inclined to deny the motion and finds that there may be some -- some evidence, albeit circumstantial, that could put a jury in a position to conclude that -- that the Defendant committed this act. So I'm just going to -- I'm going to deny your motion with respect to that count.

Green then testified in his own defense and gave the jury his version of events from March 12. He did not deny interacting with A.H., but characterized their encounter in much different terms. Green testified that he was on his way to the CVS from his home[7] when he saw who he thought was a 40-year-old female friend of his named Dana Hayne walking in front of the house where a different friend, George Baker, used to live, so he turned down the road to talk to her. Though it was not his friend Dana, Green testified that he pulled over anyway to "ask[] her did she know George Baker," and when A.H. said she did not, Green "said thank you and drove off." Green denied opening the door to his car or gesturing for A.H. to get in, testified that he did not know A.H.'s father and denied

---

[7] The evidence showed that Green lived in the same neighborhood as A.H.

9

using his name, said the softball bats were for his "little great grandson," and opined that the stuffed unicorn was not his, but might belong to his niece who would occasionally use his car. At various points, Green told the jury that harming A.H. "never crossed [his] mind" and that "[he] had no intentions of nothing" in speaking with her, adding that he "would never hurt a child" and had "never harmed a kid."

Green also told the jury that, on March 12, like most days, he spent a large portion of his time in the CVS parking lot "just sit[ting] there and play[ing] [his] radio" because it was "something to do." Asked about the day in question, Green repeatedly testified that he did not recall speaking with any CVS employees and denied entering the CVS. But after being impeached with Sgt. Guest's bodycam footage, Green admitted he "might have talked to the two [CVS employees] at the store." When confronted about his changing story, Green admitted that he lied to Sgt. Guest but said he did so because he consumed "half a pint" of vodka on the morning of March 12, had recently received a DUI, and "didn't want to go to jail."

After Green's testimony concluded, he renewed his motion for directed verdict on the attempted enticement charge. The trial court denied the renewed motion without elaboration, stating only that it "decline[d] to alter its [previous] ruling," but noted renewal of the motion for the record. At the end of trial, the jury returned guilty verdicts on each of the four counts charged. Green was sentenced immediately thereafter.

(b) Green appealed his convictions to the Court of Appeals, where he argued in relevant part that the trial court erred in denying his motion for directed verdict on the attempted enticement charge, asserting that insufficient evidence was presented at trial to sustain it. See *Green*, 371 Ga. App. at 262-264 (2). The Court of Appeals agreed and reversed this conviction in Division 2 of its opinion. Id.

The Court of Appeals' discussion on this enumeration of error began with a recitation of OCGA § 16-6-5 (a)'s statutory language and citation to its precedent for the proposition that a conviction for enticement "must be based upon some evidence that an act of

indecency or child molestation was the intended motivation for the enticement." *Green*, 371 Ga. App. at 263 (2) (citing *Lasseter v. State*, 197 Ga. App. 498, 499-500 (1) (339 SE2d 85) (1990)). The Court of Appeals then reasoned that, while the evidence presented at trial was sufficient to prove "that Green attempted to entice the minor victim into his vehicle," that same evidence was not sufficient to establish "that an act of indecency or child molestation was the intended motivation for Green's attempted enticement of the minor victim." *Green*, 371 Ga. App. at 263-264 (2) (cleaned up). With respect to Green's "intended motivation," the Court of Appeals held that the evidence was not just insufficient, but "lacking" altogether, as was the case in *Phillips v. State*. Id. (citing 354 Ga. App. 88, 92 (1) (840 SE2d 165) (2020)).[8] To support that conclusion, the Court of

---

[8] In *Phillips*, a defendant was convicted of three counts of attempted enticement and challenged the sufficiency of the evidence on appeal. 354 Ga. App. at 90-92 (1). There, the evidence at trial showed that the defendant attempted to entice three different children at three different times and locations: first, by gesturing at a minor victim for her to come get in his car; second, by telling a minor victim that he "like[d] her hair" before asking "if she wanted to put her bike in the back of his car and go[;]" and third, by making a "money gesture" from his car toward a minor victim. Id. The Court of Appeals reversed each conviction due to an "absence of evidence showing that an act of

Appeals observed that A.H. "denied that Green said anything about wanting to take her somewhere else to 'try and have relations with [her]' or anything similar[,]" and rejected the State's position – the same position maintained on appeal to this Court – "that Green's arguably suggestive prior comments to one of the CVS employees constituted evidence of Green's motivation for enticing the minor victim." Id. (citation omitted). Instead, it reasoned the CVS evidence was "not evidence of the motivation required" and suggested, as Green argues before this Court on appeal, that because the unwanted, sexually suggestive comments comprising the CVS evidence were directed at adults, those comments had no relevant evidentiary value with respect to Green's intent to entice A.H., a minor, for indecent purposes. See id. at 263 (2) ("Green's comments to the CVS employee, while upsetting, were directed to another adult and were not evidence of the motivation required here.").

In sum, despite the CVS evidence having been admitted at trial

---

indecency or child molestation behind [the defendant's] apparent attempts to entice the victims into his vehicle[.]" Id. at 92 (1).

as evidence intrinsic to the charged crimes, see *Green*, 371 Ga. App. at 264-266 (4) (citation omitted), the Court of Appeals concluded that the CVS evidence was categorically "not evidence" of the type needed to sustain an attempted enticement conviction. Id. at 262-264 (2).[9] Thus, absent any relevant evidence to establish the intent component for an attempted enticement, the Court of Appeals analogized the present case to *Phillips*, where "the State failed to present any evidence" to establish the defendant's intent, such that the evidence presented at trial was necessarily insufficient. Id. (citing 354 Ga. App. at 92 (1)). Applying that same logic here, the Court of Appeals reversed Green's conviction as unsupported by sufficient evidence.

2. *Analysis*

(a) The enticement statute provides that: "[a] person commits

---

[9] To the extent that the Court of Appeals' discussion of the CVS evidence in Division 4 was limited to the attempted kidnapping charge, we attribute the siloed context of its analysis to the fact that this enumeration was chronologically the last one to be addressed. The record reflects that the CVS evidence was generally admitted by the trial court for any purpose, rather than on a limited basis, see OCGA §§ 24-1-104 and 24-1-105, and that the only request to limit the admissibility of the CVS evidence was from the State and later withdrawn. See *Green*, 371 Ga. App. at 264 (4), n.7. See n.6, supra.

the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). Enticement, like all other crimes, requires a "joint operation of an act or omission to act and intention or criminal negligence." OCGA § 16-2-1 (a). See *In the Interest of T.B.*, 313 Ga. 846, 854 (3) (874 SE2d 101) (2022) ("[C]onduct cannot be characterized as a 'crime' unless, at a minimum, the conduct satisfies both the 'act' element and the 'intention' element of the statutory offense.") (citing OCGA § 16-2-1 (a)). In the present case, Green concedes that he satisfied the act requirement for this crime when he "reached out to A.H. and [tried] to grab at her[,]"and the Court of Appeals concluded the same. See *Green*, 371 Ga. App. at 263 (2) ("Here, there was evidence that Green attempted to entice the minor victim into his vehicle."). See OCGA §§ 16-6-5 (a) and 16-2-1 (a). Thus, it is only the intent requirement for this crime's joint operation that is at issue here. OCGA § 16-2-1 (a).

To obtain a conviction under OCGA § 16-6-5 (a), the State must

15

establish that the defendant acted with the requisite intent – that is, the State must offer evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the defendant enticed[10] a minor victim "for the purpose of child molestation or indecent acts."[11] That a defendant possessed such an intent must be proven whether the crime is charged as a completed offense or as an attempted offense. See OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of the crime.").

In the decision below, the Court of Appeals discounted the CVS evidence on a categorical basis as not relevant to Green's intent because the comments comprising the CVS evidence were directed at adults, rather than children. See *Green,* 371 Ga. App. at 263 (2).

---

[10] While we refer to enticement throughout this opinion given the facts of this case, a defendant's soliciting or taking of a child can also satisfy the act requirement. See OCGA § 16-6-5 (a).

[11] The code does not define the "indecent acts" referred to in OCGA § 16-6-5 (a), and we need not do so today. That said, the State's theory at trial was that Green sought to entice A.H. for the purpose of committing acts that were sexual in nature, and Green's briefing accepts that acts sexual in nature would be included among those contemplated by the statute.

16

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." OCGA § 24-4-401 ("Rule 401"). We have said that "[r]elevance is a binary concept – evidence is relevant or it is not." *Jones v. State*, 301 Ga. 544, 546 (1) (802 SE2d 234) (2017) (citation omitted). Moreover, relevance under Rule 401 is distinct from probative value. See *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016) ("Evidence is relevant if it has '*any tendency*' to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable.") (emphasis in original).

Here, Green's intent was a fact of consequence to the determination of the attempted enticement charge because he pleaded not guilty to that charge. See *Olds*, 299 Ga. at 72 (2) ("[I]ntent was put at issue by the defendant entering a plea of not guilty. That such a plea puts the State to its burden of proving each and every element of the crimes charges id beyond dispute.")

17

(citations omitted)). Accordingly, if the CVS evidence has any tendency to make it more or less probable that Green acted with the requisite intent – that is, more or less probable that Green's act of enticing A.H. was for the purpose of committing child molestation or an indecent act – then the evidence is relevant.

We conclude that the CVS evidence is relevant to Green's intent in this case, as it has some tendency to make it more probable that Green's enticement of A.H. was done for the purpose of committing child molestation or an indecent act. In *Olds*, we explained "that evidence that an accused committed an intentional act generally is relevant to show – the evidence, in other words, has *some* tendency to make more or less probable – that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances." *Olds*, 299 Ga. at 72 (2) (citations omitted; emphasis in original). Such is the case here.

The record establishes that, in the span of approximately six hours, Green interacted with three members of the opposite sex: 15-

18

year old A.H. and the two CVS employees. Green attempted to get each of these women into his car under false pretenses and through the use of deception – first, by feigning injury at the CVS and later, by telling A.H. that her father, who Green referred to by name, had requested Green pick her up. Less than an hour before Green encountered A.H., he made unwanted, sexually suggestive comments to one of those CVS employees, telling her that he could "show her a few tricks" or "show her a few things," which that employee interpreted as an attempt by Green "to coax [her] to get in [Green's car] and go do things with him" that were sexual in nature.[12] Because Green's interactions with the CVS employees, and in particular, his interaction with the employee that he offered to "show a few tricks," were "committed close in time and under similar circumstances" to his interaction with A.H., that evidence has some tendency to make it more probable that Green acted with a similar,

---

[12] These facts distinguish the present case from *Phillips*, where the defendant's words and conduct toward minors were not supported by any facts to suggest that a defendant's intent was sexual in nature. See 354 Ga. App. at 91-92 (1).

sexually-related intent with respect to his attempted enticement of A.H. *Olds*, 299 Ga. at 72 (2). As such, the CVS evidence is relevant to Green's intent for the attempted enticement conviction.

(b) Having concluded that the CVS evidence is relevant to Green's intent and that the Court of Appeals erred by categorically disregarding it, we turn to whether the evidence presented at trial on the issue of Green's intent was sufficient. We conclude that it was.

In a sufficiency review, "we view the evidence presented at trial in the light most favorable to the verdicts and consider whether it was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Wilkerson v. State*, 317 Ga. 242, 245 (1) (892 SE2d 737) (2023) (citations omitted). In so doing, we "leave[] to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." Id. (citation omitted). Among those matters left for a jury's consideration is whether a defendant

20

acted with the requisite intent to commit the crimes charged. See *Poole v. State*, 312 Ga. 515, 518-519 (863 SE2d 93) (2021) ("[C]riminal intent is a question for the jury, and it may be inferred from that person's conduct before, during, and after the commission of the crime.") (citation omitted)); OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused in prosecuted."). See also *Bryan v. State*, 371 Ga. App. 769, 776 (1) (b) (903 SE2d 160) (2024) ("Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this.") (citation omitted)); OCGA § 24-14-9 ("In arriving at a verdict, the jury, from the facts proved, and sometimes from the absence of counter evidence, may infer the existence of facts reasonably and logically consequent to those proved.").

While Green testified that "[he] had no intentions of nothing," when interacting with A.H., a jury is permitted to draw reasonable

21

inferences, including on the issue of intent, from his denial and other evidence presented at trial. Here, we think the jury could reasonably infer Green's intent with respect to his enticement of A.H. from the relevant and intrinsic CVS evidence, as that evidence demonstrated that Green's prior actions, "which took place on the same day, and in one instance, shortly before the incident with the victim[,]" *Green*, 371 Ga. App. at 265 (4), were motivated by a purpose that was sexual in nature. The fact that Green's sexually-related overtures toward the employee that he offered to "show a few tricks" were frustrated by the employee's rejection of his efforts also increases the probative value of that evidence with respect to Green's intent when he encountered A.H. less than an hour after being rejected.

Additionally, "jurors [are] authorized to consider their disbelief in [a defendant's] testimony – and the inconsistencies between it and the eyewitness accounts of others – as substantive evidence of his guilt" where "some corroborative evidence exists for the charged offense[.]" *Maynor v. State*, 317 Ga. 492, 498 (2) (a) (893 SE2d 724) (2023) (citation omitted); *Daughtie v. State*, 297 Ga. 261, 263-264 (2)

(773 SE2d 263) (2015) (citations omitted). Green himself offered corroborative evidence for the attempted enticement conviction by admitting that he approached A.H. on March 12. Moreover, Green's testimony was inconsistent with the testimony of both A.H. and the CVS employees in several material respects. For example, Green denied opening the door to his car, gesturing for A.H. to get in, or using the name of A.H.'s father, despite A.H. testifying to those facts, and he denied entering the CVS on March 12, but the CVS employees testified that he did so twice. When confronted about those inconsistencies on cross-examination, Green told the jury that he "d[id]n't have a clue" why his story was different from theirs. In the face of these inconsistencies, the jury was authorized to reject Green's version of events and treat his inconsistent testimony as substantive evidence of his guilt. See *Maynor*, 317 Ga. at 497-498 (2) (a) (concluding that jury was authorized to reject defendant's testimony that he acted in self-defense where the only evidence offered in support of that defense was the defendant's self-serving

23

statements).[13]

3. *Conclusion*

Based on the foregoing, we hold that the CVS evidence presented at trial was relevant under Rule 401 and sufficient as a matter of constitutional due process to establish Green's intent for the attempted enticement conviction. Accordingly, the decision of the Court of Appeals is reversed in part.

*Judgment reversed in part. All the Justices concur.*

---

[13] We also note that the jury could infer consciousness of guilt from Green's flight from the scene of his encounter with A.H. See *Jenkins v. State*, 313 Ga. 81, 88-89 (3) (868 SE2d 205) (2022).