**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 5, 2026**

# In the Court of Appeals of Georgia

A25A1504. CALANDRA v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Donald J. Calandra of one count of enticing a child for indecent purposes and one count of criminal attempt to commit the felony of child molestation. On appeal, Calandra challenges the sufficiency of the evidence supporting his convictions and argues the trial court erred in admitting evidence of his prior criminal acts. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on February 5, 2022, Kelly Huffman took her then-nine-year-old twin boys, E. H. and C. H., to a large department store to do some shopping. As Huffman browsed the

---

[1] See, e.g., *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

women's clothing section, E. H. told her that he needed to use the restroom. And given the restroom's close proximity to the women's section, Huffman allowed E. H. to go there unaccompanied while she continued shopping.

As E. H. entered the men's restroom and approached a urinal, he heard a man talking to himself and saw feet under the bathroom stall. Once he finished using the bathroom, E. H. walked toward the door to leave, at which point the man—who had now exited the stall—asked if he was going to wash his hands. E. H. paused, returned to the sink, and began washing his hands. As he did, the man—who was now using the other bathroom sink—asked if E. H. was okay. When E. H. responded that he was fine, the man asked if he wanted a hug. E. H. said no, but as he did, the man grabbed him by the shoulder and asked for a kiss. Frightened, E. H. ran from the bathroom, quickly found his mother, and told her what happened—describing the man as a person wearing what appeared to be a janitor's uniform.

Huffman immediately went to the restrooms to see if the man was still around. And just outside the restrooms, she saw a store employee and informed her of what happened to E. H. At Huffman's behest, the employee looked in the men's restroom while Huffman called 911; but the restroom was empty. The employee then asked E.

2

H. what the man looked like, and the boy's description matched Calandra, an employee of the department store who performed maintenance and janitorial work. At that point, the store employee left Huffman and her sons with a store manager while she went to locate Calandra.

The store manager then attempted to calm Huffman and E. H., who were both upset, and he asked E. H. to explain exactly what happened. As E. H. recounted the incident, Calandra approached the cash-register desk, where the manager was standing, and abruptly asked if he could use the telephone there. Because E. H. was standing behind a rack of clothes, Calandra did not initially see him, but at the same time that Calandra asked to use the phone, the store manager heard E. H. say to his mother, "That's him." The manager then intervened to stop a visibly angry Huffman from confronting Calandra, and he then moved her and her two sons to a different part of the department store to wait for law enforcement—who arrived just a few minutes later. And after speaking with Huffman and E. H. about the incident and observing that E. H. had some redness around his neck and shoulder, the officers arrested Calandra.

The State charged Calandra, via indictment, with one count of enticing a child for indecent purposes and one count of criminal attempt to commit the felony of child molestation. Before trial, the State filed a motion to admit evidence of Calandra's prior criminal acts under OCGA § 24-4-404 (b) and OCGA § 24-4-414. And at the conclusion of a hearing conducted just before jury selection, the trial court ruled the evidence was admissible as to intent and granted the State's motion over Calandra's objection.

The case proceeded to trial, during which the State presented the above evidence. The State also presented the two prior-acts witnesses. The first of those witnesses, Daniel Mangan, testified that he grew up in Ohio and knew Calandra as a neighbor of his grandparents. In 1992, Mangan—who was six years old at the time—was visiting his grandparents and playing outside when he and Calandra had a conversation about Mangan needing a stuffed animal toy that he could use for show-and-tell at school. Calandra responded that he had some in a basement closet and asked Mangan to accompany him there to pick one out. Once in the basement, Calandra opened the closet and told Mangan he would have to sit up on Calandra's shoulders to reach the shelf. Mangan refused, and the next thing he recalled was

waking up in the hospital, having been admitted for head trauma. The State then submitted a certified copy of Calandra's guilty plea to a charge of felonious assault related to that incident.

The second prior acts witness, Joseph Lang—who also grew up in Ohio—testified regarding an incident in 1985, when he was 15 years old. Specifically, Lang testified that he and a friend had walked to a hobby store, but on the way home, his friend left him to stop at another friend's house. While taking a shortcut down a road that passed by some woods, Calandra came up behind Lang, grabbed him, and forced him into the woods. There, Calandra kissed him and tried to unzip the zipper on Lang's pants. When Lang tried to pull away, Calandra threw him to the ground, got on top of him, placed his hands around his neck, and threatened to break his neck if he struggled. After Lang nodded that he understood, Calandra helped him up, at which point Lang doubled over and told Calandra he was about to vomit. As Calandra took a step backward, Lang used the opportunity to turn, run, and scream for help. In short order, Lang saw a friend of his parents who lived farther down that street, ran to him, and told him what had happened. Minutes later, Lang and the neighbor saw a police vehicle—coincidentally on routine patrol—and waved it down. Lang

recounted the incident to the officer, and a few days later, he identified Calandra as the perpetrator in a photographic lineup.

At the close of evidence, Calandra moved for a directed verdict, which the trial court denied. And at the trial's conclusion, the jury found Calandra guilty on both counts in the indictment. Calandra then filed a motion for new trial, which the trial court also denied. This appeal follows.

1. Calandra argues the evidence was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] Importantly, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there

---

[2] See *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29(1) (733 SE2d 72) (2012) (quotation marks omitted). See *Jackson v. Virginia*, 443 U.S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light

is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Calandra's specific challenge to the sufficiency of the evidence supporting his convictions.

(a) *Enticing a child for indecent purposes*. OCGA § 16-6-5 (a) provides: "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." Significantly, this statute has been held to "include the element of 'asportation,' and [the appellate courts of Georgia have] held that this element is satisfied whether the 'taking' involves physical force, enticement, or persuasion."[5] But any asportation—no matter how slight—is

---

most favorable to the prosecution, could any rational jury have found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (quotation marks omitted).

[5] *Reid v. State*, 361 Ga. App. 617, 620(1) (865 SE2d 245) (2021) (quotation marks omitted). Accord *Whorton v. State*, 318 Ga. App. 885, 887(1)(a) (735 SE2d 7) (2012).

"sufficient to show the taking element of enticing a child for indecent purposes."[6] The statute's language, then, does not mandate a showing that "the movement was done in order to hide the subsequent abuse or to make the victim 'easier' to abuse; instead, it requires only that the movement have been accomplished 'for the purpose of child molestation or indecent acts.'"[7]

In this matter, Count 1 of the indictment charged Calandra with enticing a child for indecent purposes by alleging he "did unlawfully solicit and entice [E. H.], a child under the age of sixteen years, to a bathroom sink for the purpose of indecent acts . . . ." On appeal, Calandra argues the evidence only shows that he asked if E. H. was going to wash his hands, and so he merely implied the child should maintain good hygiene. Essentially, Calandra contends the State failed to prove that his request showed an intent to engage in an indecent act. But criminal intent is a question for the jury, and it "may be inferred from that person's conduct before, during, and after the

---

[6] *Reid*, 361 Ga. App. at 620 (1) (quotation marks omitted). Accord *Whorton*, 318 Ga. App. at 887(1)(a).

[7] *Reid*, 361 Ga. App. at 620(1); see OCGA § 16-6-5(a).

commission of the crime."[8] Indeed, intent—which is a mental attitude—is "commonly detectible only inferentially, and the law accommodates this."[9] Here, although suggesting that E. H. wash his hands after using the restroom may seem innocuous, when E. H. complied, Calandra then continued by asking the child for a hug, grabbing his shoulder, and asking for a kiss. Given these circumstances, there was ample evidence from which the jury could infer that Calandra had a present intent to commit an indecent act when he enticed E. H. to return to the sink rather than exiting the bathroom.[10]

Calandra seemingly further argues that there was no evidence of asportation, questioning whether the small amount of movement from the bathroom door back to the bathroom sink was sufficient. But as noted above, any asportation—no matter how

---

[8] *Poole v. State*, 312 Ga. 515, 518–19 (863 SE2d 93) (2021) (quotation marks omitted). Accord *State v. Green*, 321 Ga. 204, 213(2)(b) (913 SE2d 621) (2025).

[9] *Bryan v. State*, 371 Ga. App. 769, 776(1)(b) (903 SE2d 160) (2024). Accord *Green*, 321 Ga. at 213(2)(b).

[10] See *Bryan*, 371 Ga. App. at 775–76(1)(b) (holding sexually explicit text messages sent to victim constituted evidence from which a jury could infer defendant enticed victim with the intent to commit an indecent act); *Thomas v. State*, 324 Ga. App. 26, 27–28 (748 SE2d 509) (2013) (explaining that jury was authorized to conclude that defendant kissing victim was "an immoral or indecent act").

slight—is "sufficient to show the taking element of enticing a child for indecent purposes."[11] As a result, Calandra's act in enticing E. H. to return to the bathroom sink was more than sufficient to satisfy the asportation element of enticing a child for indecent purposes.[12]

(b) *Attempt to commit child molestation.* OCGA § 16-4-1 provides: "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." And under OCGA § 16-6-4(a)(1), a person commits child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" In order to constitute a substantial step, an act must be one

---

[11] *Reid*, 361 Ga. App. at 620(1) (quotation marks omitted).

[12] See *id.* at 620-21(1) (holding defendant's encouragement for victim to move from couch, where victim was asleep, to floor where defendant was sitting, was sufficient to constitute the "asportation" element of enticing a child for indecent purpose); *Tudor v. State*, 320 Ga. App. 487, 492–93(2) (740 SE2d 231) (2013) (concluding movement of victim a short distance from a living room to a kitchen table satisfied the asportation element of enticing a child for indecent purposes); *Whorton*, 318 Ga. App. at 887(1)(a) (finding that evidence defendant called victim to come from a different part of the house and into his bedroom satisfied the asportation element of enticing a child for indecent purposes).

10

that is "done in pursuit of the intent, and more or less directly tending to the commission of the crime."[13] And generally, such an act "must be inexplicable as a lawful act, and must be more than mere preparation."[14] Importantly, whether an act qualifies as a substantial step toward commission of a crime is "'a question of degree,' and depends upon the circumstances of each case."[15]

Here, Count 2 of the indictment charged Calandra with criminal attempt to commit a felony by alleging that he "did knowingly and intentionally attempt to commit the crime of Child Molestation . . . , that [he] did grab [E. H.], a child under the age of sixteen years, and ask said child for a kiss, an act which constitutes a substantial step toward the commission of said crime . . . ." On appeal, Calandra argues that asking E. H. for a kiss is not an immoral or indecent act necessary to show an attempt to commit child molestation as a matter of law. But the determination of whether "a particular act is immoral or indecent is a jury question that may be

---

[13] *Gonzalez v. State*, 359 Ga. App. 147, 150(1)(b) (857 SE2d 88) (2021) (quotation marks omitted).

[14] *Id.* (quotation marks omitted).

[15] *Id.* (quotation marks omitted).

11

determined in conjunction with the intent that drives the act."[16] And given that in previous instances this Court has affirmed jury verdicts finding a kiss to be an immoral or indecent act, we disagree with Calandra's contention that an attempted kiss cannot also constitute an attempt to commit an immoral or indecent act.[17] The evidence was sufficient, then, to support Calandra's conviction on the charge of attempt to commit child molestation.

(c) *Rule of Lenity*. Although not separately enumerated as error, Calandra further claims that if he had been convicted of child molestation, instead of an attempt to commit child molestation, the rule of lenity would apply such that he could only be sentenced for sexual battery. As a result, he reasons the rule of lenity requires that he be re-sentenced for attempted sexual battery rather than attempted child molestation. This argument is a nonstarter.

---

[16] *Pavlov v. State*, 362 Ga. App. 831, 833(1)(a) (870 SE2d 449) (2022) (quotation marks omitted). Accord *Slack v. State*, 265 Ga. App. 306, 307(1) (593 SE2d 664) (2004).

[17] See *Pavlov*, 362 Ga. App. at 832–33(1)(a) (holding that defendant's kissing of victim's neck was an immoral or indecent act sufficient to support his child molestation conviction); *Thomas*, 324 Ga. App. at 28 (finding evidence sufficient to establish that defendant committed an immoral or indecent act by kissing an eleven-year-old victim on the lips, thus supporting conviction for child molestation).

The Supreme Court of the United States has referred to the rule of lenity "as a sort of junior version of the vagueness doctrine," which requires fair warning as to what conduct is proscribed.[18] The rule of lenity ensures that "if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment."[19] But significantly, the rule of lenity comes into play "only to resolve ambiguities that remain after applying all other tools of statutory construction."[20]

We have also explained that the rule of lenity "does not apply between the statutes criminalizing sexual battery and child molestation because the offense of child

---

[18] *United States v. Lanier*, 520 U.S. 259, 266(II) (117 SCt 1219, 137 LE2d 432) (1997) (punctuation omitted). Accord *McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013).

[19] *Gordon v. State*, 334 Ga. App. 633, 634 (780 SE2d 376) (2015) (punctuation omitted). See *McNair*, 293 Ga. at 283 (noting the rule of lenity provides that statutory ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment).

[20] *State v. Nankervis*, 295 Ga. 406, 409(2) (761 SE2d 1) (2014) (punctuation omitted). See *Woods v. State*, 279 Ga. 28, 31(3) (608 SE2d 631) (2005) (holding that when a crime is penalized by a special law, the general provisions of the penal code are not applicable).

molestation requires additional proof of the defendant seeking to arouse his own sexual desires, which is not required for the offense of sexual battery."[21] And likewise, the offense of sexual battery "requires proof of physical contact and the victim's lack of consent, which are not required for the offense of child molestation."[22] Consequently, the two statutes "do not conflict and there is no uncertainty as to which penal clause is applicable in this case."[23] As a result, Calandra's argument in this regard lacks merit.

2. Calandra further maintains the trial court erred in admitting evidence of his prior bad acts. Yet again, we disagree.

---

[21] *In the Interest of P. T.*, 353 Ga. App. 511, 515(1)(b) (838 SE2d 596) (2020). See *Koroma v. State*, 350 Ga. App. 530, 532–33(2) (827 SE2d 903) (holding no ambiguity existed between the sexual-battery statute and the child-molestation statute such that the rule of lenity applied); *Parfenuk v. State*, 338 Ga. App. 95, 100–01(3) (789 SE2d 332) (2016) (same).

[22] *In the Interest of P. T.*, 353 Ga. App. at 515(1)(b). Compare OCGA § 16-6-22.1(b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.") with OCGA § 16-6-4(a)(1) ("A person commits the offense of child molestation when such person … [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]").

[23] *In the Interest of P. T.*, 353 Ga. App. at 515(1)(b).

OCGA § 24-4-404(b) ("Rule 404(b)") provides, *inter alia*, that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident.[24]

But evidence that is offered for a proper purpose under Rule 404(b) may still be excluded under OCGA § 24-4-403 ("Rule 403") if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[25] And to properly weigh the considerations of these two evidentiary rules and evaluate the admissibility of so-called "other acts" evidence,[26] the Supreme Court of Georgia has adopted a three-part test: "(1) the

---

[24] (Emphasis supplied).

[25] OCGA § 24-4-403. Accord *Morris v. State*, 340 Ga. App. 295, 306(4) (797 SE2d 207) (2017) (punctuation omitted).

[26] See *Olds v. State*, 299 Ga. 65, 69(2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. Rule 404 (b) is one

evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[27] Lastly, we review a trial court's decision "to admit evidence of other crimes for a clear abuse of discretion."[28]

More precisely, Calandra challenges the admission of his prior bad act involving Daniel Mangan,[29] arguing that, under Rule 404(b), it was not similar enough to the

---

such provision, and so, when we have considered the meaning of Rule 404 (b), we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b)." (citations omitted)); *State v. Jones*, 297 Ga. 156, 158(1) (773 SE2d 170) (2015) (noting that Georgia courts have adopted the three-part test used by the Eleventh Circuit in evaluating other-acts evidence under the Federal Rules of Evidence, upon which Georgia's new Evidence Code is modeled). See also Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 137 (6th ed. 2018) (noting that "[t]he adoption of OCGA § 24-4-404 (b) provides Georgia with a statutory framework for the admission of other acts evidence for non-character purposes").

[27] *Bradshaw v. State*, 296 Ga. 650, 656(3) (769 SE2d 892) (2015) (punctuation omitted). Accord *Morris*, 340 Ga. App. at 306(4).

[28] *Jernigan v. State*, 357 Ga. App. 415, 420–21(2) (848 SE2d 707) (2020) (punctuation omitted).

[29] The trial court ruled that the prior acts evidence pertaining to Joseph Lang were admissible under OCGA § 24-4-414, rather than § 24-4-404(b), and Calandra does not appeal that ruling.

current charges against him and its probative value was far outweighed by the prejudice he suffered. But there is no requirement that "the prior crime or transaction be absolutely identical in every respect."[30] Indeed, when considering the admissibility of similar-transaction evidence, the "proper focus is on the similarities, not the differences, between the separate crime and the crime in question."[31]

Here, the prior-acts evidence of Mangan involved Calandra luring a young child to a secluded place—his basement—for a seemingly harmless reason and then becoming physically aggressive with that child when he refused to comply with Calandra's request to climb up on his shoulders. And although, fortunately, E. H. did not suffer an injury similar to Mangan's, the evidence here also involved Calandra persuading a young child to go to a secluded place—a bathroom—and then grabbing him near the neck and shoulder when he refused a request for a hug and kiss. Given these circumstances, contrary to Calandra's contention, the two incidents were similar. And as for Calandra's argument that this evidence was unfairly prejudicial,

---

[30] *Curry v. State*, 330 Ga. App. 610, 615(1) (768 SE2d 791) (2015) (quotation marks omitted). Accord *Cross v. State*, 354 Ga. App. 355, 363(2)(b) (839 SE2d 265) (2020).

[31] *Curry*, 330 Ga. App. at 615–16(1) (quotation marks omitted). Accord *Cross*, 354 Ga. App. at 363(2)(b).

our Supreme Court has held that "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence."[32] Suffice it to say, the probative value of this prior-acts evidence was considerable in this case, as it undermined Calandra's defense that his encounter with E. H. was harmless and lacked any nefarious intent.[33] The trial court did not err, then, in admitting this evidence of prior acts.

For all these reasons, we affirm Calandra's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

[32] *Bradshaw v. State*, 296 Ga. 650, 658(3) (769 SE2d 892) (2015) (quotation marks omitted).Accord *Cross*, 354 Ga. App. at 363(2)(b).

[33] See *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 588–89(4)(b)(ii) (865 SE2d 206) (2021) (holding prior acts evidence of defendant touching buttocks of adult females was admissible in child molestation case under Rule 404(b) and Rule 403 to show inappropriate touching was not innocent or accidental).